Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7100 | **DATE** | 2/26/2003 |
| **CASE TITLE** | Barbara Yacobellis, et al vs. Spri Products, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion for summary judgment is denied [19-1]. The parties are to file their Final Pre-trial order in open court on March 25, 2003 at 10:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 28 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 26 |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 03 FEB 28 AM 8:25 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA YACOBELLIS, KATIE KOUBA, and ELIZABETH HUGHES, <br><br> Plaintiffs, <br><br> v. <br><br> SPRI PRODUCTS, INC., <br><br> Defendant. | Judge Ronald A. Guzman <br> 01 C 7100 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Barbara Yacobellis, Katie Kouba, and Elizabeth Hughes ("Plaintiffs") have sued SPRI Products, Inc. ("SPRI") for sexual harassment ("Count I") and retaliation ("Count II") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. §2000(e) *et seq*. Before the Court is the Defendant's motion for summary judgment on Count II. For the reasons provided in this Memorandum Opinion and Order, Defendant's motion for summary judgment is denied.

## FACTS

Defendant, SPRI Products, Inc., is an Illinois corporation with its principle place of business in Libertyville, Illinois (although at the time related to the allegations in the Complaint, its principle place of business was Mundelein, Illinois) engaging in the business of fitness product distribution. (SPRI's Statement of Facts, ¶ 10). Since January

1

1976 Scott Swanson ("Swanson") has been the Vice-President and second most senior manager of SPRI and, as such, has had the authority to terminate employees. (*Id.* ¶ 11). During 2000, Phil Trotter ("Trotter") was engaged as a consultant and made decisions regarding the management of the customer service department, including hiring and firing. (*Id.* ¶ 12).

### BARBARA YACOBELLIS

The Plaintiffs are three former employees of SPRI. (*Id.* ¶¶ 2, 5, 8). Plaintiff Barbara Yacobellis ("Yacobellis") was hired as a customer service representative in February 1998. (*Id.* ¶ 2). She was moved into marketing and international sales and was then promoted to customer service supervisor on June 1, 1999. (*Id.* ¶ 3).

During 2000, Yacobellis repeatedly complained about the persvasive atmosphere of sexual harassment prevalent at SPRI to Phil Trotter (Marketing Manager) and to Scott Swanson (Vice President and Owner). (Plt. Yacobellis Affidavit ¶4). SPRI claims, and Plaintiffs deny, that Yacobellis was demoted to customer service representative on July 1, 2000 with a pay decrease from $29,500 per year to $25,000 per year. (SPRI's Statement of Facts, ¶ 3; Pls.' Reply to Def.'s Statement of Facts, ¶ 3). The demotion was allegedly due to her poor performance, negative attitude, and her inability to deal with the customer service staff. (*Id.*). On or about August, 2000, Yacobellis threatened Scott Swanson with a sexual harassment claim, if he did not stop sexually harassing her, and thereafter she even refused to go into his office. (Plt. Yacobellis Affidavit ¶5).

On September 14, 2000, Yacobellis was terminated from her employment with SPRI. (SPRI's Statement of Facts, ¶¶ 2, 14). Trotter directed the termination of Yacobellis and participated in her termination. (*Id.* ¶ 15). Yacobellis was not told that she was being

2

terminated because she was complaining or not putting up with harassment (*Id.* ¶ 17) nor were ther any contemporaneous allegations of misconduct by SPRI made as to Yacobellis' performance. (Plt. Yacobellis Affidavit ¶ 4).

Plaintiffs contest SPRI's contention that Trotter decided to terminate Yacobellis as part of changes being made in the customer service department. (SPRI's Statement of Facts, ¶ 16; Pls.' Reply to Def.'s Statement of Facts, ¶ 16). Plaintiffs also contest the SPRI's allegation that Yacobellis was terminated because of her negative attitude, poor performance, rudeness, and lack of cooperation, or because her attitude was causing problems with the performance of others. (SPRI's Statement of Facts, ¶¶ 3, 16; Pls.' Reply to Def.'s Statement of Facts, ¶¶ 3, 16). In addition, Plaintiffs deny SPRI's claim that Trotter was not motivated by any desire to retaliate against Yacobellis and was not even aware of her allegations of sexual harassment. (SPRI's Statement of Facts, ¶ 16; Pls.' Reply to Def.'s Statement of Facts, ¶ 16).

### ELIZABETH HUGHES

Plaintiff Elizabeth Hughes ("Hughes") was hired on April 26, 1999 as a receptionist. (SPRI's Statement of Facts, ¶ 9). She was then promoted to the customer service department as an account executive on July 1, 2000. (*Id.* ¶ 9). During 2000, Ms. Hughes also began complaining to senior managers and owners at SPRI about the offensive and pervasive atmosphere of sexual harassment. On one occasion, Ms. Hughes heard Barbara Yacobellis complaining to Scott Swanson about the sexual harassment, to which Swanson replied: "You have two options, put up with it or you're fired." (Plt. Hughes Affidavit ¶6).

On September 14, 2000, Hughes was terminated from her employment with SPRI.

3

(*Id.* ¶¶ 8, 18). Trotter directed the termination of Hughes and participated in her termination. (*Id.* ¶ 19). Hughes was never given a reason for her termination. (*Id.* ¶ 21).

Plaintiffs deny SPRI's claim that Trotter decided to terminate Hughes as part of changes being made in the customer service department. (SPRI's Statement of Facts, ¶ 20; Pls.' Reply to Def.'s Statement of Facts, ¶ 20). Plaintiffs also deny that Trotter terminated Hughes because of her poor performance and uncooperativeness with staff outside of her department. (SPRI's Statement of Facts, ¶ 9; Pls.' Reply to Def.'s Statement of Facts, ¶ 9). In addition, Plaintiffs deny SPRI's claim that Trotter was not motivated by any desire to retaliate against Hughes and was not even aware of her allegations of sexual harassment. (SPRI's Statement of Facts, ¶ 20; Pls.' Reply to Def.'s Statement of Facts, ¶ 20).

Plaintiffs also contest SPRI's claim that Trotter was hired to evaluate and implement a new business plan for SPRI. (SPRI's Statement of Facts, ¶ 3; Pls.' Reply to Def.'s Statement of Facts, ¶ 3). SPRI claims, and Plaintiffs deny, that Trotter was involved in changes regarding the transition of a paperwork heavy customer service department focusing on administration to an aggressive, sales oriented department focusing on selling the product, relocating the department and furnishing the department with new equipment. (SPRI's Statement of Facts, ¶ 13; Pls.' Reply to Def.'s Statement of Facts, ¶ 13). Plaintiffs deny, as well, that Trotter had determined that the department as a whole was inadequate in performance and could not be saved and that he attempted to save some personnel and terminated others. (*Id.*). In addition, Plaintiffs deny that by September 2000 all employees felt to be inadequate in performance and attitude turned over (due to transfer or termination) except Yacobellis and Hughes. (*Id.*). Plaintiffs also reject the SPRI's allegation that new employees were scheduled to start in the department the week prior to

4

Yacobellis and Hughes terminating and that the timing was motivated by the desire to prevent their attitudes from polluting the attitudes of the new employees. (*Id.*).

**KATIE KOUBA**

Plaintiff Katie Kouba ("Kouba") was hired as a receptionist on March 9, 1998, promoted to customer service representative on March 3, 1999, and promoted to the sales and marketing department on November 1, 1999 where she worked on national sales. (SPRI's Statement of Facts, ¶ 6). Sometime in 2000 one of Kouba's co-workers gave Kouba a sexual aid (dildo) for a gift.(Plt. Kouba's Affidavit, ¶5). Kouba repeatedly complained about the atmosphere of sexual harassment which was prevalent at SPRI and in particular complained to SPRI's owners about the fact that she was the object of repeated hazing which arose out of an incident in which she was given a sexual aid (dildo).

Plaintiffs deny Defendant's claim that on July 21, 2000 Kouba was demoted, with a pay decrease, to customer service, due to problems with follow-up, clerical errors and her own desire not to travel (which was part of the job). (SPRI's Statement of Facts, ¶ 5; Pls.' Reply to Def.'s Statement of Facts, ¶ 5). In addition, Plaintiffs deny that her attitude became very negative after the demotion. (*Id.*).

On August 16, 2000, Kouba was terminated from her employment with SPRI. (SPRI's Statement of Facts, ¶¶ 5, 22). Swanson was solely involved in the decision regarding Kouba's termination and the termination itself. (*Id.* ¶ 23). Kouba was not explicitly told her firing was retaliatory. (*Id.* ¶ 28).

Plaintiffs deny SPRI's claim that on August 16, 2000 Kouba approached Swanson and stated that she was having problems with her recent demotion. (SPRI's Statement of

Facts, ¶ 24; Pls.' Reply to Def.'s Statement of Facts, ¶ 24). They deny that Kouba indicated that she did not want to work at SPRI but couldn't quit do to her own financial circumstances. (SPRI's Statement of Facts, ¶ 25; Pls.' Reply to Def.'s Statement of Facts, ¶ 25). They deny that Kouba told Swanson that she would quit if she knew she could collect unemployment compensation. (SPRI's Statement of Facts, ¶ 26; Pls.' Reply to Def.'s Statement of Facts, ¶ 26). Further they deny that Swanson agreed then to terminate her and not to contest her claim for unemployment compensation. (*Id.*).

After termination, each Plaintiff filed a Charge of Discrimination in the EEOC alleging sexual harassment and retaliation. (*Id.* ¶ 29). Subsequently the EEOC issued Right to Sue Letters and on September 13, 2000, the Plaintiffs joined in filing a two count complaint, alleging sexual harassment and retaliation. (*Id.* ¶ 30). In the complaint, Plaintiffs allege a wide range of sexual harassment "though the course of their employment." (*Id.* ¶ 31). SPRI denies these allegations. (*Id.* ¶ 32). In the complaint, Plaintiffs also allege that their termination was motivated solely by retaliation for the Plaintiffs' refusal to tolerate harassment and for alleged threats to file charges of discrimination. (*Id.* ¶ 33). SPRI also denies these allegations and allege that Hughes did not even threaten to file charges. (*Id.* ¶¶ 34, 35).

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 56(c) allows the court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In considering

6

the evidence submitted by the parties, we do not weigh it or determine the truth of the asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). If a reasonable jury could not find for the party opposing the motion, it must be granted." *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1995).

Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter or ...has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). In the past year, the Seventh Circuit has created "a new rule for the adjudication of retaliation cases." *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the first *Stone* method, Plaintiff can establish a prima facie case by showing direct evidenc that (1) she engaged in protected activity, (2) and that she suffered an adverse employment action, (3) as a result of her protected activity. *Stone*, 281 F. 3d at 644. This method of establishing a prima facie is similar, if not identical to the rule stated by Plaintiff.

However, *Stone* offers a second, more lenient method of establishing a prima facie case. Under this method, Plaintiffs can establish her case by showing (1) she engaged in statuorily protected expression, (2) after engaging in such expression she, and only she and not any similarly situated employee who did not engage in the protected expression, (3) was subject to an adverse employment action, (4) despite the fact that she was performing her job in a satisfactory matter. *Id.*

7

Under the direct evidence test, the plaintiff is required to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he or she engaged in protected activity ... and as a result suffered the adverse employment action of which he complains. If it is contradicted, the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation. *Stone*, 281 F.3d at 644. Yet, despite Stone's clear prohibition against using circumstantial evidence under the direct method, in some instances temporarl proximity between the protected activity and the adverse action may create a triable issue. *Stone*, 281 F. 3d at 644. However, *Stone* warns that "mere temporal proximity between the [protected activity] and the action alleged to ahave been take in relations for that [activity] will rarely be sufficient in and of itself to create a triable issue." *Id.*

The affidavit and depostion testimony of all three Plaintiffs reveals that all three women were subjected to constant explicit sexual jokes and inappropriate touching experienced by all three Plaintiffs. This harassment was observed by an independent male coworker. As Defendant argues, however, the issue in this motion for summary judgment is not whether this harassment took place but rather whether all three Plaintiffs were terminated because they complained about this harassment. We find that there is sufficient evidence in the record to support Plaintiffs' case.

A jury could reasonably find that all three Plaintiffs were terminated because of their efforts to seek redress for a pattern of sexual harassment. Taking Plaintiffs version

8

of the facts as true it is undisputed that Barbara Yacobellis was complaining to Defendant's President during 2000 about the pervasive atmoshpere of sexual harassment. One incident in particular occured when Yocobellis threatened Scoot Swanson with a sexual harassment claim if he did not stop harassing her, and thereafter refused to go into his office. Yacobellis also complained to Phil Trotter, the Marketing Manager as well as Scott Swanson, the Vice President and an owner of the company. Ms. Yacobellis was fired on September 14, 2000. When Yacobellis complained to Scott Swanson his response was "[y]ou have two options, put up with it or you're fired." Exhibit C ¶6).

During 2000 Ms. Hughes also began complaining to senior managers and owners of Defendant about the offensive sexual conduct taking place. In addition, Ms. Kouba complained to Defendants throughout 2000 about being the object of repeated hazing which arose after a co worker gave her a dildo for a birthday present. Ms. Kouba was terminated one month prior to Yacobellis' and Hughes' termination. Obviously, the record contains sufficient facts to support an inference of retaliatory discharge. Whether or not Defendant's claim that the terminations were the result of a reorganization is true, is something for the trier of facts to decide at trial.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied (#19-1). The parties are to file their Final Pre-Trial Order in open court on March 25, 2003 at 10:30 a.m.

SO ORDERED

ENTERED:

*Ronald A. Guzman*

HON. RONALD A. GUZMAN
United States Judge